# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**Aug 30, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of | | |
|---|---|---|
| A black Apple iPhone with charger in black silicone case; a white/gold-colored iPhone without cover, IC#579C-82944a; a gray iPad with black cover, serial number DLXSP5UGMW3; iPad with silicone thin cover, serial number DMQJMKPZF186; an Apple laptop; a black LG cellular phone; a white iPhone bearing IMEI: 013983005864691; and a white LG cellular phone. | ) ) ) ) ) ) ) | Case No.    2:22-sw-0588 DB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A-1 through A-8, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute Controlled Substances |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of Drug Trafficking |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Victoria Anderson

*Applicant's signature*

Victoria Anderson, FBI Special Agent

*Printed name and title*

Sworn to before me and signed telephonically.

Date:    08/30/2022

City and state:   Sacramento, California

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

### AFFIDAVIT OF SPECIAL AGENT VICTORIA T. ANDERSON IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS

I, Special Agent Victoria T. Anderson, Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby state as follows:

### SCOPE OF REQUESTED SEARCH WARRANTS

1.      I write this affidavit in support of an application for a warrant to search electronic devices further described in **Attachments A-1** through **A-8**.  These searches would aim to identify electronically-stored data more specifically described in **Attachment B**.  **Attachments A-1** through **A-8** and **Attachment B** are incorporated by reference.

2.      The property to be searched consists of electronic devices ("the Devices") that are currently in the lawful possession of the FBI:

- o   A black Apple iPhone with charger in black silicone case, described in **Attachment A-1**;

- o   A white/gold-colored iPhone without cover; IC#579C-82944a, described in **Attachment A-2**;

- o   An iPad, gray with black cover, Serial Number: DLXSP5UGMW3, described in **Attachment A-3**;

- o   An iPad with silicone thin cover, Serial Number: DMQJMKPZF186, described in **Attachment A-4**;

- o   An Apple laptop, described in **Attachment A-5**;

- o   A black LG cellular phone, described in **Attachment A-6**;

- o   A white iPhone bearing IMEI: 013983005864691, described in **Attachment A-7**;

- o   A white LG cellular phone, described in **Attachment A-8**

3.      The United States government, including the FBI, is investigating Eberardo ACOSTA, and others, for violations of, inter alia, 21 U.S.C. §§ 846, 841(a)(1), conspiracy to distribute and to possess with intent to distribute methamphetamine, cocaine, heroin, and fentanyl.  A grand jury returned a sealed indictment on February 3, 2022, charging ACOSTA with federal drug trafficking and firearms offenses.  ACOSTA is currently a fugitive in Mexico, having fled the United States shortly after law enforcement executed a search warrant at his Sacramento residence on March 9, 2017, where law enforcement seized the Devices along with large

quantities of cocaine and other drugs, eleven firearms, and over $100,000 in drug proceeds, as further detailed below.

## AGENT BACKGROUND AND EXPERTISE

4.      I am a Special Agent of the Federal Bureau of Investigation ("FBI").  I have been an FBI Special Agent since August 2020.  I am currently assigned to the FBI Sacramento Field Office charged with investigating major drug trafficking organizations operating in the Eastern District of California.  I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5.      I was trained as an FBI Special Agent at the FBI Academy, Quantico, Virginia.  During my training, I received special training in the Controlled Substances Act, Title 21 United States Code, including, but not limited to, Sections 841 and 846, Controlled Substance violations and Conspiracy to Commit Controlled Substance violations, respectively.  I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute fentanyl, methamphetamine, cocaine, cocaine base, heroin, marijuana, and other dangerous drugs prohibited by law.  I received further training in search and seizure law and many other facets of drug law enforcement including clandestine laboratory investigations.

6.      As an FBI agent, I have assisted in the execution of search warrants on many occasions for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal drug statutes.  I have participated in multiple investigations targeting individuals and organizations trafficking fentanyl, cocaine, heroin, marijuana, methamphetamine, and other drugs.  During the course of these investigations, I have become familiar with the manner in which drug traffickers use telephones, cellular telephones, and other electronic devices to conduct their illegal operations.

7.      Through my training, experience, and interaction with other experienced Special Agents, Task Force Officers and Agents, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs, to collect and conceal drug related proceeds, and to communicate with other participants to accomplish such objectives.  These methods include the use of telephones, pre-paid or debit calling cards, public telephones, wireless communications technology such as paging devices and cellular telephones, counter-surveillance, elaborately planned smuggling schemes tied to legitimate businesses, and use of codes in communications in an attempt to avoid detection by law enforcement.  Based on my training and experience, I also know that violators of the controlled substances laws often purchase telephones or subscribe to telephone service using false names and/or other individuals' names to avoid detection by law enforcement.

2

8.      In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; (2) conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (3) review and analysis of information received from various sources, including evidence provided pursuant to subpoenas and search warrants; (4) physical surveillance conducted by law enforcement officials; (5) a review of public records, telephone toll records, and subscriber information; (6) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement agencies; (7) a review of driver's license and automobile registration records; (8) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (9) my training and experience as an FBI agent and/or; (10) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.  This affidavit is also based upon seizures made by the Sacramento County Sheriff's Department ("SCSD") on March 9, 2017, at 3617 Rio Pacifica Way, Sacramento, Eastern District of California, pursuant to a State of California search warrant. That warrant was issued by the Honorable Steve White, Superior Court Judge for the County of Sacramento, on March 3, 2017.

9.      Because this affidavit is submitted for the limited purpose of supporting the requested search warrants, I have not included the details of every aspect of the investigation.  I have set forth only the facts that I believe are necessary to establish a foundation for an order authorizing the search and seizure of the property identified in this affidavit.

## STATEMENT OF PROBABLE CAUSE

### *Background*

10.      The United States government, including the FBI, is investigating Eberardo ACOSTA, and others, for violations of, inter alia, 21 U.S.C. §§ 846, 841(a)(1), conspiracy to distribute and to possess with intent to distribute methamphetamine, cocaine, heroin, and fentanyl.

11.      On February 3, 2022, the grand jury returned a sealed indictment charging ACOSTA with: (1) conspiracy to distribute and to possess with intent to distribute at least 500 grams of a mixture and substance containing methamphetamine, at least 5 kilograms of a mixture and substance containing cocaine, at least one kilogram of a mixture and substance containing heroin, and at least 400 grams of a mixture and substance containing fentanyl, from at least January 1, 2016 through at least February 6, 2020, in violation of 21 U.S.C. §§ 846, 841(a)(1) (Count One); (2) possession with intent to distribute at least 5 kilograms of a mixture and substance containing cocaine, at least one kilogram of a mixture and substance containing heroin, and methamphetamine, on March 9, 2017, in violation of 21 U.S.C. § 841(a)(1) (Counts Two through Four); possession of nine firearms in furtherance of a drug trafficking crime, on

March 9, 2017, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five); and possession with intent to distribute at least 500 grams of a mixture and substance containing methamphetamine, on March 13, 2018, and June 1, 2019, in violation of 21 U.S.C. § 841(a)(1) (Counts Six and Seven). *See* Case No. 2:22-cr-21-DAD.

12.     According to a Confidential Human Source (the "CHS"),[1] ACOSTA fled the United States to Sinaloa, Mexico, shortly after law enforcement executed a search warrant at his Sacramento residence on March 9, 2017, where law enforcement seized large quantities of cocaine and other drugs, nine firearms, and over $100,000 in drug proceeds.  Until yesterday, the CHS was reporting that ACOSTA has remained in Mexico ever since, from where he has coordinated the importation and distribution of hundreds of kilograms of drugs, including methamphetamine, cocaine, heroin, and fentanyl, into and through the United States, on a regular basis.

13.     On August 29, 2022, the Mexican Government arrested ACOSTA and deported him to the United States to face charges in Case No. 2:22-cr-21-DAD.

14.     On January 11, 2022, the FBI took custody of the Devices described in **Attachments A-1 through A-8** from the SCSD.

### *Search Warrant at 3617 Rio Pacifica Way in Sacramento, Eastern District of California and Seizure of the Devices*

15.     On March 3, 2017, the Honorable Judge Steve White of the Sacramento Superior Court issued a search warrant for multiple locations, including 3617 Rio Pacifica Way, Sacramento, CA.  The warrant authorized law enforcement to search for and seize evidence of drug trafficking, including cellular telephones and personal computers, defined to also include iPads, tablets, and any other similar devices.

16.     On March 9, 2017, at approximately 7:02AM, SCSD along with other investigating agencies executed this search warrant at 3617 Rio Pacifica Way, Sacramento.  During the search, law enforcement found the following items:

- o  In the garage attic:
  - ▪  Approximately 10 kilograms of cocaine in one-kilogram bricks (field tested presumptive positive for cocaine)
  - ▪  Approximately 0.7 kilograms heroin (field tested presumptive positive)

---

[1] The CHS is currently providing information to law enforcement for consideration against potential criminal charges.  Agents have been able to independently corroborate some of the information provided by the CHS related to the drug trafficking activities of ACOSTA.  I am not aware of the CHS providing false or misleading information during this investigation.  For these reasons, I believe the information provided by the CHS to be reliable.

- Approximately one kilogram of suspected cocaine in a paper bag
- An electronic currency counter
  - o In the master bedroom:
    - At the head of the bead, a loaded Beretta handgun
    - In a Liberty gun safe next to the bed:
      - Mail addressed to Eberardo ACOSTA from the U.S. State Department containing ACOSTA's social security card and birth certificate
      - $115,200 in U.S. Currency
      - Eight firearms (four loaded)
      - Multiple firearm magazines, including several loaded extended magazines
      - A Rolex watch and a Burberry watch
    - A black Apple iPhone with charger in black silicone case, further described in **Attachment A-1**
    - A white/gold-colored iPhone without cover; IC#579C-82944a, further described in **Attachment A-2**
    - An iPad, grey with black cover, Serial Number: DLXSP5UGMW3, further described in **Attachment A-3**
    - An iPad with silicone thin cover, Serial Number: DMQJMKPZF186, further described in **Attachment A-4**
  - o In the family room area:
    - A food-saver vacuum-sealing system
    - Notepads showing pay and owe amounts of money and possible narcotics
    - An Apple laptop, further described in **Attachment A-5**
  - o In the southwest bedroom:
    - Approximately one kilogram of cocaine (field tested presumptive positive)
    - A loaded revolver and a rifle
    - Mail addressed to Vincente Quintero, 3617 Rio Pacifica Way
    - $771 in U.S. Currency
    - Packaging materials and a digital scale
    - A black LG cellular phone, further described in **Attachment A-6**
    - A white iPhone bearing IMEI: 013983005864691, further described in **Attachment A-7**
    - A white LG cellular phone, further described in **Attachment A-8**
  - o Shed in the backyard:
    - Numerous items that, based on my training and experience and that of other experienced narcotics agents, are consistent with a clandestine methamphetamine conversion lab:
      - Several one-gallon containers of acetone

- Methanol solution
- Sifting screens with clear rock chunks of crystallized methamphetamine (presumptive positive) on top of them, laying over a plastic tub containing a liquid substance
- Four Igloo coolers, two of which contained methamphetamine residue (presumptive positive) and several empty Tupperware containers with suspected methamphetamine residue
- Over a gallon brown/red/clear liquid byproduct (presumptive positive for methamphetamine)
  - Approximately one kilogram of heroin (field tested presumptive positive)
  - Approximately one kilogram of cocaine (field tested presumptive positive)
  - Approximately 1,650 M-30 pills
  - Approximately 33.5 grams of crystal methamphetamine (field tested presumptive positive)
  - Three digital scales.

17.     Vicente Quintero was encountered in the southwest bedroom and placed under arrest on state drug trafficking and firearms charges.

18.     During execution of the search warrant, a detective called ACOSTA and asked him to come to the residence.  ACOSTA said he would but never came.

## TRAINING AND EXPERIENCE REGARDING
## DRUG TRAFFICKERS AND CELLULAR TELEPHONES

19.     As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain, and tend to retain accounts or records of those transactions.  Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators.  These records may be kept on paper or contained in memory calculators or computers.  It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control.  It is my training and experience that, in the case of drug dealers, evidence is likely to be found where the dealers live.   United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986).   It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time. United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991).

20.     In my training and experience, and from what I have learned by consulting with other agents, narcotics traffickers use handheld devices like "smart" phones and mobile telephones to communicate with one another to facilitate their drug trafficking, either by voice or text message. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls,

which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones.  Mobile telephones also contain in their memory a telephone book.  This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business.  Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user.  The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate.  Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer.  Drug traffickers sometimes leave voice messages for one another and this is evidence of their mutual association and frequently their joint criminal activity.  Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crimes when used by a narcotics trafficker.  Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime.  Also, users of cell phones frequently take photographs of themselves which helps to establish the identity of the person.  Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.  In addition, all of these functions are/can be found on a "smart" phone or similar handheld device, as well as email communications.  Because there is probable cause to believe that the above mentioned defendants were engaged in the trafficking of controlled substances, including cocaine, heroin, and methamphetamine, I believe that there is probable cause to believe that the Devices seized incident to arrest and pursuant to the execution of search warrants were used to conduct drug trafficking business, and that information and records relating to these activities will be found stored in the Devices.

21.     Based on my training and experience as an FBI Special Agent, and upon the shared experience of other agents and law enforcement officers with whom I have worked, I am aware that it is common practice for individuals involved in the trafficking of narcotics to rely on the use of telephones, and particularly cellular telephones to effectuate their scheme. I also know that it is common for those involved in narcotics trafficking to communicate with suppliers and distributors.

22.     Based on my experience and training and conversations with other law enforcement officers, I know that searching photographs and videos can help corroborate firearms possession as it is not uncommon for drug traffickers to photograph or record themselves with firearms.  I am also aware that illegal drug dealers will often possess firearms as a means of intimidation as well as for protection against other illegal drug dealers, rival criminal organizations, and law enforcement.  I also know that illegal drug dealers frequently take photographs and/or videos of

7

their firearms, narcotics, and associates.  These photographs are then commonly shared and posted to the internet using social media sites such as Facebook, Instagram, and Snapchat.

23.     It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in **Attachment B** are items most often associated with communications among drug traffickers during a conspiracy.

24.     The Devices are currently in the lawful possession of the FBI.  The Devices came into the FBI's possession following law enforcement transfer.  Therefore, while the FBI might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

## TECHNICAL TERMS

25.     Based on my training and experience, I use the following technical terms to convey the following meanings:

      o   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      o   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard

drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

o   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage Device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

o   GPS:  A GPS navigation Devices uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

o   PDA:  A personal digital assistant, or PDA, is a handheld electronic Device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

- Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26.     Based on my training, experience, and research, I believe that the Devices may have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigational devices, and PDAs.   In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

28.     Forensic evidence.  As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

- Forensic evidence on the Devices can also indicate who has used or controlled them.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how the electronic Devices work may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The processes of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data

10

stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

o   Further, in finding evidence of how the Devices were used, the purpose of their use, who used them, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.   <u>Nature of examination.</u>   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

30.   <u>Manner of execution.</u>   Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

**[CONTINUED ON THE NEXT PAGE]**

## **CONCLUSION**

31.     Based on these facts, my training, and my experience, I believe there is probable cause to believe that Eberardo ACOSTA, and others have violated Title 21, United States Code, Sections 841(a)(1) and 846.  I also believe there is probable cause to believe that the Devices described in **Attachments A-1** through **A-8** will contain evidence of these crimes.

Respectfully submitted,


_____
     /s/ Victoria T. Anderson
Victoria T. Anderson
Special Agent, Federal Bureau of Investigation


Sworn to and subscribed to me telephonically on August  30, 2022


_____
DEBORAH BARNES
   UNITED STATES MAGISTRATE JUDGE


Approved as to Form:


_/s/ David W. Spencer_____
David W. Spencer
Assistant United States Attorney


12

## **ATTACHMENT A-1**

*Item to be Searched*

A black Apple iPhone with charger in black silicone case, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-2

*Item to be Searched*

A white/gold-colored iPhone without cover; IC#579C-82944a, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-3

*Item to be Searched*

An iPad, grey with black cover, Serial Number: DLXSP5UGMW3, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-4

*Item to be Searched*

An iPad with silicone thin cover, Serial Number: DMQJMKPZJ186, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-5

*Item to be Searched*

An Apple laptop, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-6

*Item to be Searched*

A black LG cellular phone, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-7**

*Item to be Searched*

A white iPhone bearing IMEI: 013983005864691, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-8**

*Item to be Searched*

A white LG cellular phone, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## <u>ATTACHMENT B</u>

*Items to be Seized*

This search warrant grants authority to seize all of the items set forth below:

1.  Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Devices identified in Attachments A-1 through A-8 or on a server and associated with the Electronic Devices identified in Attachments A-1 through A-8, including:

    a.  Incoming call history;

    b.  Outgoing call history;

    c.  Missed call history;

    d.  Outgoing text messages;

    e.  Incoming text messages;

    f.  Draft text messages;

    g.  Telephone book;

    h.  Emails;

    i.  Data screen or file identifying the telephone number associated with the mobile telephone searched;

    j.  Data screen, file, or writing containing serial numbers or other information to identify the electronic device searched;

    k.  Voicemail;

    l.  User-entered messages (such as to-do lists); and

    m.  Stored media such as photographs or video.

2.  Any passwords used to access the electronic data described above.

3.  Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions.

4.  All information and records related to violations of 21 U.S.C. § 841(a) (drug trafficking), 21 U.S.C. § 846 (conspiracy to traffic drugs), and/or 18 U.S.C. § 924(c) (possession of a firearm in furtherance of drug trafficking), including but not limited to:

a. Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

b. Data, information, or documents related to the distribution of controlled substances, including the acquisition, possession, and use of equipment, paraphernalia, and materials used in the distribution process, including firearms;

c. lists of customers and related identifying information;

d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

e. any information related to sources of drugs or drug manufacturing materials and equipment (including names, addresses, phone numbers, email addresses, or any other identifying information);

f. any information recording schedule or travel;

g. all bank records, checks, credit card bills, account information, and other financial records;

h. data, information, or documents related to the receipt of proceeds from controlled substances distribution and the transfer, investment, control, and disposition of those proceeds;

i. records of Internet Protocol addresses used;

j. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k. any communications related to drug trafficking;

l. stored media such as photographs or video.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>A black Apple iPhone with charger in black silicone case;<br>a white/gold-colored iPhone without cover, IC#579C-82944a;<br>a gray iPad with black cover, serial number DLXSP5UGMW3;<br>iPad with silicone thin cover, serial number DMQJMKPZF186;<br>an Apple laptop;<br>a black LG cellular phone;<br>a white iPhone bearing IMEI: 013983005864691; and<br>a white LG cellular phone. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.    2:22-sw-0588 DB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1 through A-8, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____September 13, 2022_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      08/30/2022, 1:09pm

City and state:      Sacramento, California

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.


_____          _____
Signature of Judge                                                    Date

## ATTACHMENT A-1

*Item to be Searched*

A black Apple iPhone with charger in black silicone case, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

13

## <u>ATTACHMENT A-2</u>

*Item to be Searched*

A white/gold-colored iPhone without cover; IC#579C-82944a, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-3**

*Item to be Searched*

An iPad, grey with black cover, Serial Number: DLXSP5UGMW3, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-4

*Item to be Searched*

An iPad with silicone thin cover, Serial Number: DMQJMKPZJ186, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-5**

*Item to be Searched*

An Apple laptop, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-6

*Item to be Searched*

A black LG cellular phone, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-7**

*Item to be Searched*

A white iPhone bearing IMEI: 013983005864691, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal Bureau of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT A-8**

*Item to be Searched*

A white LG cellular phone, seized from 3617 Rio Pacifica Way, Sacramento, Eastern District of California on March 9, 2017.  The device is currently in the custody of the Federal of Investigation.

This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Items to be Seized*

This search warrant grants authority to seize all of the items set forth below:

1. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Devices identified in Attachments A-1 through A-8 or on a server and associated with the Electronic Devices identified in Attachments A-1 through A-8, including:

   a. Incoming call history;

   b. Outgoing call history;

   c. Missed call history;

   d. Outgoing text messages;

   e. Incoming text messages;

   f. Draft text messages;

   g. Telephone book;

   h. Emails;

   i. Data screen or file identifying the telephone number associated with the mobile telephone searched;

   j. Data screen, file, or writing containing serial numbers or other information to identify the electronic device searched;

   k. Voicemail;

   l. User-entered messages (such as to-do lists); and

   m. Stored media such as photographs or video.

2. Any passwords used to access the electronic data described above.

3. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions.

4. All information and records related to violations of 21 U.S.C. § 841(a) (drug trafficking), 21 U.S.C. § 846 (conspiracy to traffic drugs), and/or 18 U.S.C. § 924(c) (possession of a firearm in furtherance of drug trafficking), including but not limited to:

a.  Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

b.  Data, information, or documents related to the distribution of controlled substances, including the acquisition, possession, and use of equipment, paraphernalia, and materials used in the distribution process, including firearms;

c.  lists of customers and related identifying information;

d.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

e.  any information related to sources of drugs or drug manufacturing materials and equipment (including names, addresses, phone numbers, email addresses, or any other identifying information);

f.  any information recording schedule or travel;

g.  all bank records, checks, credit card bills, account information, and other financial records;

h.  data, information, or documents related to the receipt of proceeds from controlled substances distribution and the transfer, investment, control, and disposition of those proceeds;

i.  records of Internet Protocol addresses used;

j.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k.  any communications related to drug trafficking;

l.  stored media such as photographs or video.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.